**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| CLARENCE LOHRKE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-322 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | |
| | **Jury Trial Demanded** |
| CODILIS, MOODY, & CIRCELLI, PC, and US BANK NATIONAL ASSOCIATION, | |
| Defendants. | |

## INTRODUCTION

1.     This class action seeks redress for outrageous collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.     Plaintiff Clarence Lohrke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5.     Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he engaged in a consumer credit transaction.

6.      Defendant Codilis, Moody, & Circelli, PC ("Codilis") is a Wisconsin law firm with its principal place of business located at 10437 Innovation Drive, Suite 253, Milwaukee Wisconsin 53226-4838.

7.      Codilis is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      Codilis is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      Codilis is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

10.     US Bank National Association ("US Bank") is a national banking association with its primary place of business located at 425 Walnut Street, Cincinnati, Ohio 45202.

11.     US Bank is in the business of, among other things, originating and servicing loans to consumers that are secured by consumers' real property.

12.     US Bank also engages in debt collection efforts with respect to loans held by US Bank or its subsidiaries.

13.     When attempting to collect debts in Wisconsin, both Codilis and US Bank are debt collectors as defined in Wis. Stat. § 427.103(3).

14.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

15.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is

an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

## FACTS

16.    Plaintiff owns real property at 3707 5th Place S, Milwaukee, Wisconsin 53207. The real property is Plaintiff's primary, and only, residence.

17.    On or around April 24, 2009, Plaintiff obtained a "Home Equity Conversion Mortgage" ("HECM") reverse mortgage from Wells Fargo Home Mortgage or a predecessor in interest, secured by Plaintiff's primary residence.

18.    A reverse mortgage is a loan against the value of the consumer's home.

19.    Unlike a forward mortgage—the type used to buy a home—a reverse mortgage doesn't require the homeowner to make any loan payments. Instead, the consumer receives funds as a lump sum, fixed monthly payment or line of credit, and the entire loan balance becomes due and payable when the borrower dies, moves away permanently, or sells the home.

20.    HECM reverse mortgages are insured by the U.S. government.

21.    Federal regulations require lenders to structure the transaction so the loan amount doesn't exceed the home's value and the borrower or borrower's estate won't be held responsible for paying the difference if the loan balance does become larger than the home's value.

22.    The reverse mortgage transaction operates as a line of credit against the equity in Plaintiff's home.

23.    The reverse mortgage also permits Plaintiff to reside in his home for the remainder of his life or if he moves away from or sells the property.

3

24.     The reverse mortgage is the primary mortgage on Plaintiff's home. At the time Plaintiff entered into the reverse mortgage transaction, Plaintiff signed two notes and two mortgages – one of each to Wells Fargo and the other to the Secretary of the Department of Housing and Urban Development ("HUD"). Both Wells Fargo and the Secretary of HUD have priority over any subsequent secured loans.

25.     On or about December 2, 2011, Plaintiff obtained a home equity line of credit [HELOC] from US Bank. The amount financed for the HELOC was less than $25,000.00 – the maximum principal / line amount for the HELOC was $20,000.

26.     At some point after December 2, 2011, Plaintiff fell behind on the HELOC payments.

27.     On or about March 6, 2019, US Bank mailed a letter to Plaintiff.  A copy of this letter is attached to this complaint as Exhibit A.

28.     Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

29.     Upon information and belief, Exhibit A is a form debt collection letter used by U.S Bank to attempt to collect alleged debts.

30.     Upon information and belief, Exhibit A is a form "Notice of Breach" letter that U.S. Bank uses to inform consumers that their accounts are in default and to advise consumers that U.S. Bank may accelerate the maturity of the debt if the consumer does not bring the account current and cure the default.

31.     Exhibit A states:

Re: Notice of Breach
Account Number : ████9322
Property Address: 3707 S 5TH PL
                  MILWAUKEE, WI 53207

Dear CLARENCE LOHRKE:

This letter will serve as notice of the breach of the above-referenced mortgage associated with the above-referenced property for failure to pay the monthly installments due thereunder.

In order to cure this breach of mortgage, send funds in the amount of $1,245.11 for payments and $290.00 for late charges, plus any additional payments and late charges that may come due within thirty (30) days from the date of this letter.

We reserve the right to accept or reject a partial payment of the Total Amount Due listed above, without waiving any of our rights herein or otherwise, including the right to proceed with foreclosure.

32. <u>Exhibit A</u> also states that Plaintiff has "the right to reinstate your loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale."

33. <u>Exhibit A</u> is an attempt to comply with the WCA's requirement to provide a customer with notice of the customer's right to cure the default. Wis. Stat. § 425.104. Such notice is a prerequisite to a lender accelerating the balance of a loan or filing a foreclosure action. Wis. Stat. § 425.105(1).

34. Wis. Stat. § 425.104 provides:

(1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105).

(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

5

35. Wis. Stat. § 425.105(1) provides:

A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205 (6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

36. On the face of Exhibit A, it is impossible to determine how much the consumer actually needs to pay to cure the default.

37. Exhibit A states that a consumer who wishes to "cure this breach of mortgage" should "send funds in the amount of $1,245.11 for payments and $290.00 for late charges, plus any additional payments and late charges that may come due within thirty (30) days from the date of this letter."

38. There are two possible ways to determine the amount that must be paid to cure the default: (i) the consumer must pay $1,535.11 (the sum of $1,245.11 and $290.00), plus any additional payments and late charges that have become due at the time the consumer tenders payment, *or* (ii) the consumer must pay $1,535.11, plus any additional payments and late charges that are scheduled to become within the next thirty days ***irrespective*** of when the consumer tenders payment.

39. Assuming the plain language in Exhibit A controls, the most likely interpretation is interpretation (ii), *i.e.,* that the consumer must pay not only the installments and late charges due at the time of tender, but also the installments that are scheduled to become due within thirty days of the letter. This interpretation violates the WCA, which expressly provides that the consumer may cure the default "by tendering the amount of all unpaid installments due at the time of the tender, ***without acceleration*** …."

6

40.     Even assuming U.S. Bank does not actually require consumers to pay installments that have not become due in the event the consumer wishes to cure the default before the end of the thirty-day period, Exhibit A does not clearly state the payment amount and date for curing the default.  Indeed, a consumer reviewing Exhibit A would not be able to determine when the next installment was scheduled to become due and so would not know how long he had to cure the default by tendering $1,535.11, or when he would need to tender the next installment's payment (and potentially a late fee) in addition to the $1,535.11 in order to cure the default.

41.     "To be valid, a notice of right to cure must fully comply with § 425.104." *Johnson v. LVNV Funding*, No. 13-c-1191, 2016 U.S. Dist. LEXIS 19651, at *20 (E.D. Wis. Feb. 18, 2016) (citing *Indianhead Motors v. Brooks*, 2006 WI App 266, ¶ 14, 297 Wis. 2d 821, 726 N.W.2d 352). A "lack of clarity regarding the amount to be paid means that the requirements of a notice of right to cure [a]re not met …." *Id.*

42.     Indeed, the Wisconsin Department of Financial Institutions makes available to lenders a form Notice of Right to Cure Notice, pursuant to which a lender would clearly communicate the payment amount and date through itemization.  *See* https://www.wdfi.org/_resources/indexed/site/wca/business_guidance/registration/RightCureDefault.pdf (accessed: Feb. 25, 2020).

43.     Instead of using the form notice made available by the Wisconsin Department of Financial Institutions, U.S. Bank used its own form letter, which does not clearly communicate the information that Wisconsin law makes prerequisite to the acceleration of the debt and the filing of a lawsuit to collect the accelerated balance.

44.     At some point, US Bank hired Codilis to collect the debt owed on the HELOC or institute foreclosure proceedings against Plaintiff.

7

45.     On or about May 21, 2019, Codilis mailed a letter to Plaintiff.  A copy of this letter is attached to this complaint as Exhibit B.

46.     Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

47.     Upon information and belief, Exhibit B is a form debt collection letter used by Codilis to attempt to collect alleged debts.

48.     Upon information and belief, Exhibit B was the first written communication that Codilis mailed to Plaintiff regarding this alleged debt.

49.     Exhibit B states that the "amount of the debt" as of May 21, 2019 was $22,087.07 and that, "because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater."

50.     Exhibit B falsely represents the amount, character, and legal status as being accelerated.  As neither US Bank nor Codilis sent Plaintiff a Notice of Right to Cure that satisfies the requirements of Wisconsin law, the balance was not accelerated as of the date of Exhibit B.

51.     Moreover, although the HELOC is, ostensibly, secured by the Plaintiff's primary residence, U.S. Bank's HELOC mortgage is junior to the Wells Fargo reverse mortgage.

52.     As of the date of filing of this complaint and for several months prior to this complaint, the amount owed on the Plaintiff's home has far exceeded the value of the home. The home is "underwater."  For example, the City of Milwaukee's current tax assessment value for the home is $148,000 but the loan balance of the reverse mortgage, as of August 31, 2019, was about $169,969.75, and increasing by about $900 per month.  Upon information and belief, as of this filing, the balance is about $175,000.

8

53.     US Bank filed a foreclosure action on June 20, 2019. *U.S. Bank National Association vs. Clarence Lohrke et al.*; Milwaukee County Case Number 2019CV004746 ("the Foreclosure Action"). A copy of the complaint in the foreclosure action is attached as Exhibit C.

54.     According to the foreclosure complaint, as of June 14, 2019, the amount owed on the HELOC was $21,894.11, including principal, interest, and other charges.  Exhibit C ¶ 15.

55.     Even if the cure amount and date in Exhibit A were clearly communicated, it appears that the amounts sought in Exhibit A and Exhibit B were inconsistent with the actual amount owed on the HELOC account.

56.     Exhibit A states that the HELOC had incurred $290.00 in late fees and Exhibit B, sent a month before the foreclosure action, states that the balance was $22,087.07.  These amounts are plainly inconsistent with the account information provided in the foreclosure complaint, which stated that Plaintiff's account had incurred late fees of $60.00 and had a total balance of $21,894.11.

57.     Plaintiff did not make payments on the HELOC account that would account for the late fees and balance being lower in the foreclosure complaint than in Exhibits A and B.

58.     At a minimum, the unsophisticated consumer would be confused by the discrepancy between the amounts sought in Exhibits A through C. Indeed, it is for this reason that both Wisconsin law and federal law require creditors and debt collectors to itemize aspects of the debt that would otherwise confuse or mislead consumers. *See* Wis. Stat. § 425.104(2) (requiring itemization of "any delinquency charges"); *Johnson v. LVNV Funding*, No. 13-c-1191, 2016 U.S. Dist. LEXIS 19651, at *9 (E.D. Wis. Feb. 18, 2016) (observing that a notice of right to cure must itemize all delinquency charges); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (failure to itemize fees "was misleading because it gave a false impression of the character

9

of the debt."). Indeed, the unsophisticated consumer is aware that loan balances increase rather than decrease over time when the consumer is not making payments due to the addition of interest and fees.

59.

60.     The circuit court entered default judgment of foreclosure against Lohrke on September 9, 2019.

61.     Upon information and belief, US Bank chose to initiate foreclosure proceedings against Plaintiff purely for the purpose of harassment. As the holder of the junior mortgage, US Bank can only foreclose its mortgage subject to the interest of the primary lienholder – Wells Fargo.

62.     As Wells Fargo's mortgage is a reverse mortgage, Plaintiff cannot be removed from his property through the foreclosure process. He retains the right to live in his home until he dies or chooses to move away.

63.     Moreover, US Bank cannot actually recover any money from Plaintiff or the property. In exchange for a six-month shortened redemption period, US Bank waived the opportunity to seek a deficiency against Lohrke's personal assets. Wis. Stat. § 846.101; *Bank Mut. v. S.J. Boyer Constr., Inc.*, 785 N.W.2d 462, 469 (Wis. 2010); Foreclosure Action, Order of September 9, 2019 ("Plaintiff's Motion for Default Judgment of Foreclosure heard. Court grants motion. Redemption period set at Six (6) Months. No Deficiency. Filed, signed Order for Judgment.").

64.     Upon information and belief, US Bank and Codilis also failed to properly provide notice of the Foreclosure Action to Wells Fargo, instead engaging in sneaky tactics to make it

appear that US Bank had notified Wells Fargo's home mortgage division while not actually doing so.

65.     Specifically, Plaintiff previously owed a judgment to Wells Fargo's credit card arm for a credit card debt. *Wells Fargo Bank, N.A. vs. Clarence Lohrke*; Milwaukee County Case Number 2018SC037043 (the "Credit Card Action"). The complaint in the Credit Card Action specifies that the Wells Fargo Bank account was a credit card account.

66.     In the Foreclosure Action, US Bank named Wells Fargo Bank, N.A. as a judgment creditor, but referenced only the judgment in the Credit Card Action while failing to disclose that Wells Fargo also held the primary mortgage on the property and that Wells Fargo's mortgage is senior to US Bank's. Exhibit C ¶ 15.

67.     Upon information and belief, US Bank did not mention the senior mortgage held by Wells Fargo otherwise notify "Wells Fargo Home Mortgage," the division of Wells Fargo Bank, N.A. responsible for consumer mortgage loans, of the Foreclosure Action. If it had, Wells Fargo would likely have intervened to protect its interest in Plaintiff's property.

68.     Likewise, upon information and belief, US Bank also failed to disclose the Foreclosure Action to the HUD Secretary.

69.     If US Bank and Codilis were aware of Wells Fargo's interest in the property, both defendants concealed the Foreclosure Action from Wells Fargo's Home Mortgage division in the hopes of using the court system and foreclosure process to intimidate Plaintiff into leaving or selling his home voluntarily or to make payments to US Bank.

70.     If Codilis was not aware of the reverse mortgage when it prosecuted the Foreclosure Action, Codilis acted deficiently as an attorney.

11

71.     No reasonable attorney would approve the filing of a non-recourse foreclosure action that cannot result in US Bank taking possession of the property or in US Bank recovering any money from the property or Plaintiff.

72.     Upon information and belief, Codilis filed and obtained a default judgment despite no attorney having assessed the validity of the alleged debts to the standards required of an attorney.

73.     Codilis is a high-volume debt collector.

74.     Attorney Codi Gratz electronically filed the complaint in the Foreclosure Action on June 20, 2019.

75.     Despite graduating law school in 2014, Attorney Gratz has been attorney of record in 1,841 cases as of September 23, 2019, including cases as far away as Douglas County.

76.     Upon information and belief, from the time that consumer debts are placed with Codilis for collection until the time that judgment is entered, the only employees of Defendant who are directly involved in the collection process of consumer debts are non-attorneys. Attorneys such as Attorney Gratz only examine a collection file with any level of scrutiny if the consumer files an answer or appears in court on the return date, or after judgment is entered.

77.     Upon information and belief, a significant portion of Codilis's debt collection activities during that time period consists of computer-automated processes, including the generation of computer-generated state court complaints.

78.     Upon information and belief, at the time Codilis filed the Foreclosure Action on US Bank's behalf, neither Codi Gratz nor any other attorney at Codilis had meaningfully reviewed any documentation underlying the alleged debts, including but not limited to any contract, payment

history or any other documents establishing or evidencing the alleged debts or the security interests encumbering the Plaintiff's property.

79.     Upon information and belief, at the time Codilis filed the Foreclosure Action on US Bank's behalf, neither Codi Gratz nor any other attorney at Codilis had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Codilis or a one or more US Bank employees generated the complaint for the Foreclosure Action.

80.     Upon information and belief, at the time at the time Codilis filed the Foreclosure Action on US Bank's behalf, neither Codi Gratz nor any other attorney at Codilis had exercised the professional judgment of an attorney that Plaintiff was delinquent on her debt and a candidate for legal action, nor was any attorney at Defendant meaningfully involved in the decision to file the Foreclosure Action.

81.     Upon information and belief, neither Codi Gratz nor any other attorney at Codilis had made an individualized assessment of the circumstances Plaintiff Voeks' account or Plaintiff's liability, before the Foreclosure Action was filed.

82.     Upon information and belief, neither Codi Gratz nor any other attorney at Codilis personally reviews foreclosure complaints such as Plaintiff's in any meaningful sense, before the complaint is filed.

83.     Plaintiff was misled and confused by Defendants' conduct.

84.     The unsophisticated consumer would be misled and confused by Defendants' conduct.

### *The WCA*

13

85.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

86.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

87.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

88.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

89.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

90.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats.

§§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

91.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

92.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

93.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

94.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

95.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

96.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "use a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not."

15

97.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

### *The FDCPA*

98.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal

16

statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

99.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

100.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the

17

debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

101.    15 U.S.C. § 1692d generally prohibits "any conduct the natural consequence of which is to harass, appress, or abuse any person in connection with the collection of a debt."

102.    15 U.S.C. § 1692d(4) specifically prohibits "the advertisement for sale of any debt to coerce payment of the debt."

103.    15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

104.    15 U.S.C. § 1692e(2) specifically prohibits the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

105.    15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

18

106. 15 U.S.C. § 1692e(4) specifically prohibits "the representation or implication that nonpayment of any debt will result in the …. seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

107. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

108. 15 U.S.C. § 1692e(10) specifically prohibits: "use of any false representation or deceptive means to collect or attempt to collect any debt."

109. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

110. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

111. 15 U.S.C. § 1692g(a)(1) requires that the debt collector clearly and accurately state the "amount of the debt" on the day the letter was mailed. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004).

## <u>COUNT I – WCA</u>

112. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113. Defendants filed the Foreclosure Action for the purpose of harassment.

114. At the time Codilis filed the Foreclosure Action on US Bank's behalf, both Defendants knew that Wells Fargo held a higher priority lien than US Bank's.

19

115.    Codilis and US Bank also waived any deficiency in the Foreclosure Action.

116.    As a result, the judgment in the Foreclosure Action cannot result in US Bank taking possession of Plaintiff's home.

117.    Nonetheless, Defendants pursued the Foreclosure Action with the purpose of tricking Plaintiff in to believing he will lose his home so that he leaves voluntarily.

118.    Defendants also failed to name the primary lienholder, Wells Fargo Home Mortgage, in the Foreclosure Action, so that Wells Fargo was not aware of the action and did not intervene.

119.    Defendants also failed to notify the HUD Secretary so that the United States could intervene to protect its interests.

120.    If an attorney had been meaningfully involved in the review of the account prior to the mailing of the Codilis letter and the initiation of the foreclosure proceedings, Defendants would not have initiated the foreclosure.

121.    Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), 427.104(1)(L), and 427.104(1)(k).

## COUNT II – FDCPA

122.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.    Defendants filed the Foreclosure Action for the purpose of harassment.

124.    At the time Codilis filed the Foreclosure Action on US Bank's behalf, both Defendants knew that Wells Fargo held a higher priority lien than US Bank's.

125.    Codilis and US Bank also waived any deficiency in the Foreclosure Action.

20

126.     As a result, the judgment in the Foreclosure Action cannot result in US Bank taking possession of Plaintiff's home.

127.     Nonetheless, Defendants pursued the Foreclosure Action with the purpose of tricking Plaintiff in to believing he will lose his home so that he leaves voluntarily.

128.     Defendants also failed to name the primary lienholder, Wells Fargo Home Mortgage, in the Foreclosure Action, so that Wells Fargo was not aware of the action and did not intervene.

129.     Defendants also failed to notify the HUD Secretary so that the United States could intervene to protect its interests.

130.     If an attorney had been meaningfully involved in the review of the account prior to the mailing of the Codilis letter and the initiation of the foreclosure proceedings, Defendants would not have initiated the foreclosure.

131.     Defendant violated 15 U.S.C. §§ 1692d, 1692d(4), 1692e, 1692e(3), 1692e(4), 1692e(10), 1692f, and 1692f(6).

## COUNT III – WCA

132.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

133.     Count III is brought against both Defendants.

134.     U.S. Bank did not mail Plaintiff a proper notice of right to cure.

135.     Exhibit A did not clearly and accurately itemize all delinquency charges and state the payment amount and date for curing the default.

136.     Defendants accelerated the balance and filed a lawsuit against Plaintiff prior to the mailing of an effective notice of right to cure.

21

137.    Defendants violated Wis. Stat. §§ 425.104, 425.105, and 427.104(1)(j).

## **COUNT IV – FDCPA**

138.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

139.    Count IV is brought against Defendant Codilis.

140.    U.S. Bank did not mail Plaintiff a proper notice of right to cure.

141.    Codilis falsely accelerated the balance and filed a lawsuit against Plaintiff prior to the mailing of an effective notice of right to cure.

142.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## **COUNT V – FDCPA**

143.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

144.    Exhibit B, sent a month before the foreclosure action was filed, states that the balance ($22,087.07) was greater than the balance sought in the foreclosure complaint ($21,894.11).

145.    Plaintiff did not make payments on the HELOC account that would account for the balance being lower in the foreclosure complaint than in the initial dunning letter.

146.    Exhibit B overstates the amount of the HELOC balance.

147.    At a minimum, the unsophisticated consumer would be confused by the discrepancy between the amounts sought in Exhibits B and C. The unsophisticated consumer is aware that loan balances increase over time when the consumer is not making payments due to the addition of interest and fees.

22

148.    The foreclosure complaint also misstates the amount of "Late Charges" that Wells Fargo was seeking. Exhibit C states that Wells Fargo is seeking $60.00 in late charges, while Exhibit A states that Plaintiff must pay $290.00 in late charges. The HELOC mortgage statements indicate that each monthly late charge is $29.00, so it is unclear and confusing how Defendants calculated late fees of $60.00.

149.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## CLASS ALLEGATIONS

150.    Plaintiffs bring this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin (b) who were sent a Notice of Right to Cure letter in the form represented by Exhibit A to the complaint in this action by U.S. Bank, (c) and subsequently sued on the debt, where (d) the debt was incurred for personal, family, or household purposes, and (e) the lawsuit was filed February 27, 2018 and February 27, 2020, inclusive.

151.    The Class is so numerous that joinder is impracticable.

152.    Upon information and belief, there are more than 50 members of the Class.

153.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether Defendants complied with the FDCPA and WCA.

154.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

155.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

156.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

157.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and

the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  February 27, 2020

ADEMI & O'REILLY, LLP

By:    /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

24